**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION**

**UNITED STATES OF AMERICA**

**v.** **CASE NO. 5:25cr2-MW**

**BROCK A. WESTROM**
_________________________________/

# RESPONSE IN OPPOSITION TO DEFEDANT'S MOTION TO COMPEL

The United States of America, by and through the undersigned Assistant United States Attorneys, respectfully moves this Honorable Court to deny the Defense's motion to compel. The Government has already provided in discovery the materials in the Government's possession that are relevant for the Defense's preparation, and the additional, intrusive discovery the Defense asks this Court to order would require the Government to manufacture evidence and is neither relevant nor material.

## FACTUAL BACKGROUND

Between July 17-20, 2024, the Bay County Sheriff's Office (BCSO), with assistance from other law enforcement partners, conducted an online, undercover operation targeting adults seeking children for sex. During the operation, a BCSO Deputy posted an advertisement on a webpage known for casual sexual encounters and prostitution. The post included photographs of young girls and stated "hmu if u wanna chill ;)" and "looking for fun[.]" The post also included a contact number.

The Defendant messaged the purported child and asked "you available[,]" to which she replied "yaa but i wanna be straight im 15 but its cool[.]" The Defendant immediately responded "[y]eah as long as your not a cop[.]" He then proceeded to tell the person he believed was a 15-year-old child that he was interested in "cowgirl" and "oral," by which he meant "[e]ating [her] out." Further, he was nervous to send his picture because he did not know for sure whether she was a cop and that he just didn't want to get caught with someone underage. Finally, he negotiated a price for the sex acts he wanted, arranged a meeting location, traveled to the location, and was arrested.

In addition to this conversation, the Defendant engaged in a contemporaneous text messaging conversation with another purported child after seeing a second post on the same website. This second post also included pictures of a young girl, a contact number, and promised "no games and no questions[.]" The Defendant responded to this ad and messaged asking whether 'she' did "outcall," to which the 'child' responded telling the Defendant that 'she' couldn't drive yet because she was 13 years old. In reality, the Defendant was messaging with FBI Special Agent (SA) Daniel Moxley.

The Defendant then proceeded to ask this ostensible child whether 'she' was a cop and asked 'her' to send a picture with nudity because "[c]ops don't send nudes." The Defendant also told 'her' that he liked "giving oral" and loved "getting

rode." He later clarified that "I want to eat you out first, then put you on top of me" and discussed a possible meeting location. The Defendant sent his last message to SA Moxley at 6:21 PM EDT, which was the precise time he sent his last message to the ostensible 15-year-old, telling the 15-year-old that he was "on my way[.]" At 6:28 pm EDT, the Defendant reported SA Moxley's phone number as "spam," which deleted his conversation with SA Moxley.

After his arrest, the Defendant agreed to talk to law enforcement. During his interview, the Defendant acknowledged seeking "sexual favors" from the 15-year-old after he was told her age, by which he meant "eat out" and "cowgirl." The officer interviewing the Defendant also confronted him about his conversation with SA Moxley, asking whether he had ever talked to another minor. The Defendant admitted that he did talk to "another person today" who was brunette. The officer asked the Defendant "what did you tell this other minor because obviously we know about that one too." The Defendant responded, "the same thing," meaning "cowgirl" and "oral."

The Government subsequently obtained a search warrant for the Defendant's phone and obtained a full file extraction of the device. No direct messages between the Defendant and SA Moxley were discovered on the phone. However, the Government's computer forensic analyst was able to determine that the Defendant marked SA Moxley's phone number as "spam" and reported it to the service provider

using the "Spam Reporting" number at 6:28:13 PM EDT on July 19, 2024. This action typically deletes messages from a cell phone. The analyst also found photographs SA Moxley sent to the Defendant on the Defendant's phone, as well as a photograph the Defendant sent to SA Moxley. The Defense was subsequently provided a complete, forensic copy of the Defendant's phone extraction and a copy of the computer forensic analyst's report.

On October 1, 2025, the Defense requested that the Government produce "the database for the messaging application" that SA Moxley used when chatting with the Defendant. The Government denied the Defense's request as it would require the Government to create evidence and was not relevant under Fed. R. Crim. P. 16 considering SA Moxley's expected testimony that he did not delete any messages from his chat with the Defendant. In response, the Defense filed the instant motion to compel.

In response to the Defense's initial request and subsequent motion, the undersigned consulted with SA Moxley and the Government's computer forensic analyst. According to SA Moxley, he uses the native messaging application on his FBI-issued phone when participating in undercover chat operations. SA Moxley uses his FBI-issued phone exclusively for undercover operations, and due to the nature of the crime under investigation, SA Moxley uses the phone at all hours of the day and night. Further, his messaging conversations are not documented in a separate

program that creates a log of his chats. Rather, he maintains all subject conversations on his government device and provides screen captures of the complete conversation when needed for discovery purposes.[1] SA Moxley has been certified by the FBI to conduct undercover chat operations since 2019. Since that time, he has participated in thousands of undercover chats, resulting in hundreds of state and federal arrests. In all the cases he has participated in, he has never been asked or required to produce the iMessage database to "prove" that he has not deleted any messages.

Further, to comply with the Defense's request for SA Moxley's iMessage database would require a computer forensic analyst to extract the entire contents of SA Moxley's FBI-issued iPhone, including evidence related to ongoing, unrelated investigations. In order to attempt to isolate the production to just information relating only to this case, the analyst would then be required to redact unrelated messages from the database and search the entire contents of the extraction for any artifacts indicative of deleted messages. The Government's analyst anticipates it would take approximately 30 hours to produce a report on the content of the iMessage database in a manner that would also protect the content relating to other investigations.

---

[1] A complete copy of the Defendant's text message conversation with SA Moxley is provided in exhibit 1. The conversation is internally consistent, consistent with the Defendants conversation with the other undercover officer (Dkt. 50, p. 3-6), and the last message on each page is repeated at the top of the next page, further signifying that the conversation is complete and unaltered.

## LAW AND ARGUMENT

"There is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Instead, a defendant's right to discovery is prescribed principally by Rule 16(a) of the Federal Rules of Criminal Procedure, the Due Process Clause of the Fifth Amendment, as construed by *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and the Jencks Act, 18 U.S.C. § 3500. See *United States v. Jordan*, 316 F.3d 1215, 1249-53 (11th Cir. 2003).

Defense asserts they are entitled to the iMessage database from SA Moxley's phone under Rule 16 because it contains the Defendant's statements.

Under Rule 16(B),

> the government must disclose to the defendant, and make available for inspection, copying or photographing…any relevant written or recorded statement by the defendant if: the statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement exists.

The Government has complied with the requirements of Rule 16(B). The Defendant's entire conversation with SA Moxley has been provided to Defense in discovery. Even in the Defense motion, there has been no declaration that the provided screenshot conversation is missing messages or what those missing messages might be. In other words, there has been no indication that SA Moxley tampered with the evidence in this case by deleting any portion of the conversation.

The Defendant's statements have been provided and the Government has exercised its due diligence to ensure there are no other statements.

Moreover, the Defense motion actually appears to be a request to "inspect…data" under Rule 16(E). Rule 16(B) is not an end-run-around to the other discovery rules – a Defendant may not assert that data may contain statements and therefore not have to articulate a basis for discovery under the remainder of the rules.

Under Rule 16(E), the Defense must make three showings. First, they must describe the information they seek with sufficient particularity to demonstrate that the evidence is "material to preparing the defense" under Rule 16 or "material to guilt or punishment" under *Brady*. Second, they must demonstrate that the information they seek is within the Government's possession, custody, or control. Third, the information they seek must not be protected from disclosure by an applicable privilege.

The defendant bears the burden of making a "[p]rima facie showing of 'materiality' in order to obtain discovery." *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978). The Eleventh Circuit has explained what constitutes items "material to preparing the defense" as follows:

> A general description of the item will not suffice; neither will a conclusory argument that the requested item is material to the defense. *See United States v. Carrasquillo–Plaza*, 873 F.2d 10, 12–13 (1st Cir.1989); *United States v. Cadet*, 727 F.2d 1453, 1466 (9th Cir.1984). Rather, the defendant must make a specific request for the item

> together with an explanation of how it will be "helpful to the defense." *See, e.g., United States v. Marshall*, 132 F.3d 63, 67–68 (D.C.Cir.1998) ("helpful" means relevant to preparation of the defense and not necessarily exculpatory); *United States v. Olano*, 62 F.3d 1180, 1203 (9th Cir.1995). As the Fifth Circuit put it in *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir.1978) (quoting *United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir.1975)), the defendant must "show" "more than that the [item] bears some abstract logical relationship to the issues in the case.... There must be some indication that the pretrial disclosure of the [item] would ... enable [ ] the defendant significantly to alter the quantum of proof in his favor."

*United States v. Jordan*, 316 F.3d 1215, 1250–51 (11th Cir. 2003). The Defense has failed to meet their burden of demonstrating materiality. There has been no description, nor outright assertion, that there are missing messages and what they contain. The request is simply a fishing expedition to satisfy Defense that "this is a true and accurate copy of the conversation." (Doc 48 at 3.) Consequently, there has been no indication that the compulsion of a full data extraction of the iMessage database would "significantly…alter the quantum of proof" in Defense's favor.

The Defense also cannot meet their burden in requiring the production of the data under Rule 16(E)(ii). As is clear from the facts above, the Government does not intend to introduce the iMessage data in its case-in-chief at trial and will rely on the screenshots of the conversation as captured by SA Moxley.

Not only has Defense failed to articulate what discoverable information would be revealed by providing access to the iMessage database, Defense has not addressed

the fact that the iMessage database contained on SA Moxley's FBI-owned iPhone will contain information relating to numerous ongoing criminal investigations. Even if Defense had satisfied the threshold requirement under Rule 16(E), a defendant is not entitled to review or access material covered by the law enforcement privilege. This Circuit has recognized the existence of a law enforcement privilege and used that privilege as a basis to deny discovery requests such as this one. *United States v. Van Horn*, 789 F.2d 1492, 1507 (11th Cir. 1986) (recognizing "a qualified governmental privilege not to disclose sensitive investigative techniques"); *See also, In re Department of Investigation of the City of New York v. Myerson*, 856 F.2d 481, 484 (2d Cir. 1988) ("The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation."); *United States v. Garey*, 2004 WL 2663023 (M.D.GA. Nov. 15, 2004) (stating "the Eleventh Circuit and other courts applying the investigative techniques privilege have held that where the defendant has access to evidence – such as the product of the surveillance – from which a jury can determine the accuracy and validity of the surveillance equipment and techniques, the defendant has no need for the information that outweighs the government's interest in keeping [information about the equipment and techniques] secret.") (unpublished).

There is no way to get the information sought by Defense without either 1) giving them access to ongoing law enforcement investigations if a full data extraction is performed; or 2) performing a full data extraction on the iPhone and then performing significant forensic data analysis to locate the information relating to this particular conversation while excluding the rest of the law enforcement sensitive data in the database. In other words, what Defense is asking for is not a simple "plug in the iPhone, select the conversation, and just give the database for that conversation." And, it appears that the second option, only delivered after significant work by the Government's analyst, still will not satisfy the Defense request as access to the database is not envisioned.

## CONCLUSION

Accordingly, the evidence of this Court should deny the Defense's motion to compel.

RESPECTFULLY SUBMITTED this 17th day of October, 2025.

JOHN P. HEEKIN
United States Attorney

***/s/ Meredith L. Steer***
MEREDITH L. STEER
Assistant United States Attorney
South Carolina Bar No. 105392
111 North Adams Street, Fourth Floor
Tallahassee, FL 32301
(850) 942-8430

***/s/ Eric W. Welch***
ERIC W. WELCH
Assistant United States Attorney
Virginia Bar No. 71544
111 North Adams Street, Fourth Floor
Tallahassee, FL 32301
(850) 942-8430

CERTIFICATE OF WORD COUNT COMPLIANCE

I HEREBY CERTIFY that this memorandum complies with the type-volume limitation of Local Rule 7.1(F) because this pleading contains 2,499 words.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been filed with the Clerk of Court under seal on this 17th day of October, 2025, and a copy has been separately provided to defense counsel of record, Elizabeth Vallejo.

***/s/ Meredith L. Steer***
MEREDITH L. STEER
Assistant United States Attorney

***/s/ Eric W. Welch***
ERIC W. WELCH
Assistant United States Attorney