**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

**UNITED STATES OF AMERICA,**

**v.** **Case No. 5:25cr2-MW**

**BROCK A. WESTROM,**

**Defendant.**
**_____________________________/**

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION IN LIMINE & NOTICE OF INTENT TO USE EVIDENCE PURSUANT TO FED.R.EVID. 404(b)**

Defendant, Brock A. Westrom, by and through undersigned counsel and pursuant to Federal Rules of Evidence 403 and 404(b), hereby objects to the Government's Motion in Limine & Notice of Intent to Use Evidence Pursuant to Fed. R. Evid. 404(b), ECF No. 50. Mr. Westrom respectfully moves this Honorable Court to exclude any evidence, testimony, or reference to the conversation between FBI Special Agent Moxley (referred to by the Government as "UC1") and Mr. Westrom, which occurred via text message on July 19, 2024. This conversation should be excluded because it is distinct from Mr. Westrom's conversation with BCSO Investigator Madison Nelson (referred to by the Government as "UC2"). In

his conversation with UC1, Mr. Westrom did not explicitly acknowledge that he was told he was talking to a minor and he ultimately stopped responding to UC1, before he marked UC1's phone number as "spam." Additionally, UC2 purported to be 15 years old, while UC1 pretended to be 13 years old. Therefore, Mr. Westrom's conversation with UC1 has an inflammatory aspect that is absent in his conversation with UC2. Any minimal probative value of Mr. Westrom's conversation with UC1 is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. As a result, it should be excluded. Fed. R. Evid. 403.

## FACTUAL BACKGROUND

On July 19, 2025, Mr. Westrom accessed the "Skip the Games" website and navigated to the section of the website containing advertisements for female escort services. Once Mr. Westrom was within the female escort section, he viewed several advertisements which portrayed adult women. For several of these advertisements, Mr. Westrom clicked on a tab and completed a "CAPTCHA," (Completely Automated Public Turing Test to tell Computers and Humans Apart), in order to access the posters' phone numbers. Using these phone numbers, Mr. Westrom then initiated text message conversations with multiple posters. Unbeknownst to Mr. Westrom, two of the advertisements to which he

responded were posted by law enforcement as part of an undercover sting operation. Notably, both of these advertisements stated that the respective female escorts were 19 years old.

The Government has provided the contents of both text message conversations between Mr. Westrom and UC1, and Mr. Westrom and UC2. While Mr. Westrom agrees that the conversation with UC2 is accurately depicted, without the forensic evidence to support the accuracy of the conversation with UC1, Mr. Westrom does not concede that this is the entire conversation.[1] Moreover, the messages the Government has included in its motion regarding Mr. Westrom's conversation with UC1 appear to be slightly different than the messages in the screenshots. After Mr. Westrom states, "[a]nything with nudity," on page 5 of the Government's motion, it appears to skip to Mr. Westrom's message "[c]ops don't send nudes." ECF No. 50, pp. 5. There also appear to be a few messages missing before Mr. Westrom sends the message, "Sexually?" *Id.*, pp. 6. On the screenshots, the messages appear as follows in the relevant portion of the conversation:

Mr. Westrom: Anything with nudity

[1] On October 14, 2025, Defense filed its Motion to Compel the Government to Provide Evidence from iMessage Database, ECF No. 48, in an attempt to verify the accuracy of Mr. Westrom's conversation with UC2.

UC1: Ya no sry

UC1: I thought u meant like doing something or saying something

Mr. Westrom: Idk how that would prove your not setting me up haha

Mr. Westrom: Cops don't send nudes

UC1: Yeah me either

Mr. Westrom: I don't know of anything else that would prove it

Mr. Westrom: Doesn't have to be full nude. Like a nipple is all

UC1: K then find someone else sry I don't send nudes

Mr. Westrom: Damn

Mr. Westrom: Ok where would we meet

UC1: I'm on the beach

UC1: What do u wanna do

Mr. Westrom: Depends on what you like

UC1: wdym

After engaging in a conversation with UC1, who pretended to be thirteen years old, Mr. Westrom ultimately stopped responding and marked UC1's phone number as "spam," thereby deleting the text conversation from his phone. Mr. Westrom drove to a parking lot near Kartona while he was messaging with UC2, who

pretended to be fifteen years old, and he was ultimately apprehended by law enforcement and taken into custody.

ARGUMENT

Extrinsic evidence of other crimes, wrongs, or acts is inherently prejudicial to the defendant. *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir.1978) (en banc). "One of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense." *Id.* at 914. The Eleventh Circuit has held that an extrinsic act is highly probative when the extrinsic act requires the same intent as the charged offense and the act is proximate in time to the charged offense. *United States v. Baker*, 432 F.3d 1189, 1205 (quoting *United States v. Church*, 955 F.2d 688, 702 (11th Cir.1992)).

In determining the admissibility under Fed.R.Evid. 404(b), Courts have implored a three-part test: 1) the evidence must be relevant to an issue other than the defendant's character; 2) there must be proof sufficient for a jury to find that the defendant committed the extrinsic act; and 3) the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and it must otherwise meet the requirements of Fed.R.Evid. 403. *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc). To meet the first requirement for

admissibility, the proponents of Rule 404(b) evidence must do more than conjure up a proper purpose—they must also establish a chain of inferences no link of which is based on a propensity inference. *United States v. Echeverri*, 854 F.2d 638, 644 (3d Cir.1988); *see also* 22 Charles Alan Wright & Kenneth W. Graham Jr., Federal Practice And Procedure: Evidence § 5239, at 459 (1978) ("[E]vidence of other crimes can be used to prove the conduct of a person if the inference to conduct can be made without the need to infer the person's character as a step in the reasoning from the other acts to the conduct in issue."). A district court should assess all the circumstances of the case, including prosecutorial need in relation to the theory of defense, similarity of the other crime to the charged offense, temporal proximity of the two acts, and whether the uncharged act has any inflammatory aspects not also present in the charged offense. *United States v. Brown*, 587 F.3d 1082, 1091 (11th Cir.2009).

The Court should exclude evidence, testimony and any reference of Mr. Westrom's text conversation with Special Agent Moxley ("UC1"). While Mr. Westrom's conversation with UC1 occurred contemporaneously with Mr. Westrom's conversation with UC2 and the conversations have some similarities, there are also important differences. These differences militate against the

government's theory that Mr. Westrom's conversation with UC1 shows Mr. Westrom's intent to entice a child to engage in criminal sexual conduct, knowledge, absence of mistake, and lack of accident.

Based on the screenshots of Mr. Westrom's conversation with UC1, Mr. Westrom did not acknowledge UC1's message stating that "she" was 13 years old. ECF No. 50, pp. 4. When UC1 indicated "she" was not old enough to drive, Mr. Westrom then asked her age. *Id.*, pp. 3. When UC1 responded that "she" was 13 years old and asked Mr. Westrom his age, Mr. Westrom responded he was "33" years old, and then Mr. Westrom asked where UC1 was located. *Id.*, pp. 4. This is in contrast to the messages with UC2, where UC2 indicated "she" is fifteen years old "but its cool," to which Mr. Westrom responded "Yeah as long as your not a cop." *Id.*, pp. 3. Mr. Westrom also stated during his messages with UC2 that "Idk just don't want to get caught with someone under age haha." *Id.*, pp. 5. Moreover, UC1 only made one other reference later in the conversation that she may be a minor, as she says "Tbh I'm not super experienced." *Id.*, pp. 6. UC1 then stated, "So I won't be mad if u don't wanna fr…," to which Mr. Westrom replied, "I'm gonna go." *Id.* In his conversation with UC1, Mr. Westrom did not give any indication that he believed he was conversing with a minor. This cuts against the argument that his

knowledge and intent was the same in both conversations.

Moreover, and perhaps most importantly, the screenshots of the messages show that UC1 sent the last message, and Mr. Westrom then did not respond. Mr. Westrom then marked the conversation as "spam" and reported it to his service provider. Although UC2 also sent the last message to which Mr. Westrom did not respond, Mr. Westrom did not mark the text conversation as "spam." This suggests that Mr. Westrom had a different intent in the conversation with UC2 versus UC1, as he deliberately ended the conversation with UC1 instead of traveling to nearby an agreed upon location. The fact that Mr. Westrom chose to disengage with UC1 also cuts against the idea that this conversation supports that he had knowledge of the UC2's age, and that there was an absence of mistake and lack of accident in his conversation with UC2. Mr. Westrom's action of removing himself from the conversation could show that he did not believe UC1 was a minor in either conversation, and that he had no intent to actually entice anyone to engage in sexual activity with him.

Because Mr. Westrom's conversations with UC1 and UC2 are markedly different, the conversation with UC1 does not survive the Federal Rule of Evidence 403 balancing test. Mr. Westrom's conversation with UC1 is extremely prejudicial

evidence and the prejudicial effect on the jury would far outweigh any probative value. Moreover, any arguable probative value of the conversation is substantially outweighed by the danger of confusing the issues, and misleading the jury. Fed. R. Evid. 403. Evidence that Mr. Westrom was conversing with two undercover officers purporting to be minors at the same time, even though there are clear distinctions in the conversations, has the strong potential of eliciting an emotional response from jurors. Moreover, the fact that UC1 purported to be 13 years old, versus UC2 who purported to be 15 years old, makes Mr. Westrom's conversation with UC1 more inflammatory. The fact that the age of the purported minor is two years younger in the uncharged conversation presents a concern that jurors would be overcome by emotion and conclude that Mr. Westrom had a propensity to entice minors to engage in sexual acts. The evidence should, therefore, be excluded pursuant to Federal Rules of Evidence 403 and 404(b).

WHEREFORE, Mr. Westrom respectfully requests that this Honorable Court deny the Government's Motion in Limine and Notice of Intent to Use Evidence Pursuant to Fed. R. Evid. 404(b), and enter an Order excluding the proposed 404(b) evidence pertaining to Mr. Westrom's text message conversation with Special Agent Moxley ("UC2").

Respectfully Submitted,

JOSEPH F. DEBELDER
Federal Public Defender

*/s/Elizabeth L. Vallejo*
ELIZABETH L. VALLEJO
Assistant Federal Public Defender
Fla. Bar No. 127120
227 N. Bronough Street, Suite 4200
Tallahassee, FL 32301
(850) 942-8818
(850) 942-8809 Fax
Attorney for Defendant

**CERTIFICATE OF SERVICE AND WORD COUNT**

I hereby certify that a copy of the foregoing has been furnished by Notice of Electronic Filing to Eric Welch and Meredith Steer, Assistant United States Attorneys, 111 N. Adams Street, 4th Floor, Tallahassee, FL 32301, this 17th day of October, 2025. This motion contains 1,933 words.

*/s/Elizabeth L. Vallejo*
ELIZABETH L. VALLEJO